## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MA'AT SEBA,

      Plaintiff,               Case No.  21-cv-10459

   v.

CREDIT BUREAU OF YPSILANTI,
INC.

      Defendant.              **TRIAL BY JURY DEMANDED**

## COMPLAINT

## INTRODUCTION

1.    Credit Bureau of Ypsilanti, Inc., ("CBY") is a not a typical debt collection "middleman" or "forwarder", but CBY operates in the shadows of state court debt collection litigation, controlling the state court litigation, having here the subject "**VERIFIED COMPLAINT FOR ACCOUNT STATED**" filed against Ma'at, singed by Elizabeth Annas, the "Administrative Manager at Credit Bureau of Ypsilanti, Inc." whose self-reported job description includes, "[c]reate legal process; complete, deliver, and handle legal documents" "Consults with clients and debtors" "validate documents", https://www.linkedin.com/in/elizabeth-annas-1b11a1a3/ (visited February 25, 2020), as "Agent for THE LAKESHORE APARTMENTS", the named state court plaintiff.

2.    CBY, hidden from courts throughout the State of Michigan and from

debtors, contracts with the Law Offices of Guy T. Conti, PLLC d/b/a ContiLegal ("ContiLegal"), to file debt collection lawsuits, in which CBY is the "client" of ContiLegal and the point person of the state court litigation.

3.     On the other hand, as related to Ma'at's debt, the Lakeshore Apartments property manager and agent is MMC Apartment Management, which is also believed to be the property manager of other properties in the Ypsilanti area, including the Red Lion.

4.     As to Ma'at, CBY is controlling the subject state court litigation resulted in Ma'at being sued, shortly before six years from her last payment, seeking more money that what Ma'at under any possible legal theory could owe, and of which, issues regarding the debt were resolved in a prior state court action, *Seba v. Lakeshore Apartments,* 14C-1749, State of Michigan, 14B Judicial District, in which the court found that the original creditor to be in breach of the lease continuingly interfering with Ma'at's access to her residence by applying its gate access policy to Ma'at in a different manner then was applied to all other residents of The Lakeshore Apartments; The Lakeshore Apartments, is "a gated community . . . [with a] resort-style pool". https://www.thelakeshoreapts.com/ (visited Feb. 25, 2021).

5.     The typical business model a "middleman" or "forwarder" in collection matters is for the "middleman" or "forwarder" to obtain an assignment of the unpaid account from the original creditor and then find another debt collector to attempt to

collect the debt, without themselves actually contacting the debt collector.  *See e.g. Badeen v. Par, Inc.,* 496 Mich. 75, 78, 853 N.W.2d 303, 304 (Mich. 2014).

6.     CBY is believed to have gained a financial stake in the outcome of the subject collection case filed against Ma'ta, to which CBY would then pay a percentage of any recovery to The Lakeshore Apartments and another fixed percentage to ContiLegal.

7.     Ma'at alleges violations of the Fair Debt Collection Practices Act, Michigan Regulation of Collection Practices Act, and Michigan Occupational Code involving the attempted collection of a long dead and adjudicated debt, via state court litigation, litigation filed in the name of The Lakeshore Apartments, even though the debt is now believed to be owned by or the rights to a monetary recovery from the state court litigation have been assigned to CBY, who is believed to be controlling the state court litigation against Ma'at, thus acting as the original creditor and the real party in interest, a sword in one hand, and using that "middleman" relationship as a shield to the fact finding process as The Lakeshore Apartments does not know the factual basis or the documents that CBY relied upon in bringing suit in The Lakeshore Apartments' name against Ma'at.

8.     Disclosing whether the real party in interest bringing or controlling the lawsuit is not the original creditor matters, as the "middleman" in the shadows of that litigation, does not have all of the facts underlying the debt, or is too busy in its

volume debt collection businesses to look at details, especially when attempting to collect on a debt almost six years old.

9.     "Debt collectors go to court with the information they have. As an industry that buys debt for an average of four cents per dollar of face value, *Structure and Practices* [of the Debt Buying Industry (Jan. 2013) available at http://www.ftc.gov/sites/default/files/documents/reports/structure-and-practices-debt-buying-industry/debtbuyingreport.pdf  at ii, consumer-debt collection, by its very nature, is a high-volume enterprise. It is dependent in large part on the acquiescence, ambivalence, or ignorance of consumers[.]" *Taylor v. First Resolution Inv. Corp.*, 2016-Ohio-3444, ¶ 5, 148 Ohio St. 3d 627, 629, 72 N.E.3d 573, 578 (Ohio 2016).

10.     CBY here likewise has a volume debt collection business and even though in the records produced in the state court litigation show an entry of attorney involvement casing an amount to be added to the balance, failed to make an inquiry into the basis for the entry, which if they had would have discovered the public record, *Seba v. Lakeshore Apartments,* 14C-1749, State of Michigan, 14B Judicial District, in which the debt was adjudicated, finding the original creditor to be in breach of the lease continually interfering with Ma'at's access to her residence by applying its gate access policy to Ma'at in a different manner then was applied to all other residents of The Lakeshore Apartments.

11.     Notably under Michigan law, in a second lawsuit involving "arising out of the transaction or occurrence alleged in the complaint has been previously filed" here part of the amount of monies alleged to be owed in the second lawsuit were adjudicated in Ma'at's favor in the first lawsuit, the suing party must disclose to the state court the first lawsuit.  MCR 1.109(D)(2)(a)(ii).

12.     Ma'at was sued on an amount of money that no creditor is entitled to as a matter of law, and under FDCPA § 1692e(14) CBY, a third party controlling the litigation, was prohibited in that using the name The Lakeshore Apartments, to prosecute a debt and sign the verification in the complaint, as its conduct amounts to "[t]he use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization."

13.     Likewise, CBY was reporting the debt on Plaintiff's credit report, and when she found out about it after the lawsuit was filed,  she, though her son, disputed the debt to the credit reporting agencies, including Trans Union, informing the credit reporting agencies of the 2014 lawsuit, but nevertheless CBY doubled down and verified the debt in violation of the Fair Credit Reporting Act.  In fact, CBY increased the amount it claimed was owed.

**JURISDICTION AND VENUE**

14.     This Court has jurisdiction under 28 U.S.C. § 1331 (Federal Question), 15 U.S.C. § 1692k (FDCPA); 15 U.S.C. § 1681p (FCRA); 28 U.S.C. § 1367(a) (Supplemental Jurisdiction).

15.     Plaintiff is an individual who resides in this District.

16.     Credit Bureau of Ypsilanti, Inc. is owned by Craig Thomas Annas, who is also the registered agent and its business address is 27 South Huron Street, Ypsilanti, MI 48197.

17.     The acts complained of by CBY occurred within the District.

**PARTIES**

18.     Plaintiff is a "debtor" in regard to the subject "debt" arising out of a residential lease used for personal, household and family use, and is the target of CBY's collection activities.

19.     CBY is a licensed collection agency, License Number 2401002783, its license type is Agency – Owner Manager, and its Owner is Craig Thomas Annas.

20.     Even though CBY owns the web domain cbofypsi.com , CBY does not display anything on that website, nor is it apparent that CBY uses any website to promote its business.

21.     Attempting to collect debts originally owed to another either by credit reporting, and/or through the use of ContiLegal in litigation, is at the core of CBY's business.

22.     CBY is a "debt collector" as that term is defined under the FDCPA § 1692a(6).

23.     CBY is a "collection agency" as that term is defined in the Michigan Occupational Code, MCL § 339.901(f).

## FACTS

24.     On March 28, 2014, Ma'at sent a letter to The Lakeshore Apartments informing it that she would begin to escrow her rent beginning with the month of April referring to the deactivation of her gate card, (a card which permitted her access to enter the gated community), as the reason why she was placing the rent in escrow.

25.     On April 10, 2014, Ma'at, initially proceeding *pro se*, filed a small claims lawsuit against her landlord, The Lakeshore Apartments and three of its employees for, "[t]enant lockout, harassment, retaliation[,] violation of tenant rights, willful neglect, violation of the Privacy Act."  Exhibit A.

26.     During the pendency of the lawsuit, Ma'at escrowed the rent due under the lease, which she later placed in escrow with the state court, and on July 18, 2014, the state court judge released the amount held in escrow, awarding Ma'at $665 on her claims to

which the court described that in regard to the "'Community Gate Policy'" "the Landlord chose to treat this Tenant differently and thereby failed to adhere to its own lease" with the $1,995 remainder going to The Lakeshore Apartments for back rent.  Exhibit B.

27.     The state court also expressly denied The Lakeshore Apartments' claim of a $50 late fee.  Id.

28.     As such, the state court judge found that The Lakeshore Apartments had breached its lease with Ma'at.

29.     Given the representation to her from The Lakeshore Apartments' lawyer that it wanted her out of the building, and Ma'at's fear of retaliation from its property manager, Ma'at vacated the apartment.

30.     Ma'at provided The Lakeshore Apartments it her forwarding address via email.

31.     The Lakeshore Apartments did not send Ma'at an itemized list of damages.

32.     On August 19, 2014, The Lakeshore Apartments zeroed out its Resident ledger as to Ma'at noting a "Balance $0.00".

33.     That should have been the end of the matter given the 2014 adjudication, but it was not.

34.     CBY then entered the picture, attempting to collect monies related to the contract that The Lakeshore Apartments breached by placing a tradeline on Ma'at's credit report.

35.     According to the information that CBY was reporting to Trans Union, the subject debt was "Placed for collection: 08/26/2014" by CBY with an "Original Amount: $2,396". Exhibit C.

36.     The subject debt is now believed to be owned by CBY or the rights to a monetary recovery from the state court litigation have been granted or assigned to CBY, as the Trans Union credit report listed the tradeline of "**CREDIT BUREAU OF YPSILAN**" that identified the "Original Creditor" as being "THE LAKESHORE APARTMENTS"

37.     CBY reported to Trans Union after Ma'at's dispute that the "Past Due" and "Balance" being "$2,615", was "**VERIFIED AS ACCURATE**". Exhibit C.

38.     Ma'at has been denied rental housing and suffered other credit related damages from CBY's credit reporting.

39.     On or about March 6, 2020, ContiLegal, at believed to be the direction of CBY, filed a lawsuit titled *The Lakeshore Apartments v. Ma'at Seba*, 20-1643-GC, State of Michigan, In the 34th Judicial District Court for the County of Wayne, (the "state court lawsuit"), asserting a one count "**<u>VERIFIED COMPLAINT FOR ACCOUNT STATED</u>**", singed by Elizabeth Annas, of CBY, her signature sworn by Guy T. Conti, of ContiLegal, followed by a template document in which in three fields has different amounts claimed to be owed: "Balance $2556.517"; "I state that the amount of 2556.5 dollars lawful money of the United States is due THE

LAKESHORE APARTM**"** (sic); and "07/30/14 $2396.57", attaching other documents, including those titled "Final account statement" and a "**LEASE AGREEMENT**". Exhibit D.

40.    In an attempt to support an "account stated claim" under the requirements set forth in MCL 600.2145, the state court complaint relied upon the declaration of Elizabeth Annas, signing as the "Agent for THE LAKESHORE APARTMENTS", within the complaint, and stating that she "ha[s] personal knowledge of the facts asserted in this verified complaint, and if called to testify could do so competently."  Exhibit D.

41.    Thus CBY has represented to the state court that it will appear and can appear in the state court litigation to testify and to do so competently if so requested.

42.    By Elizabeth Annas making the statement to the state court that she, "if called to testify could do so competently", CBY is promising the state court that CBY will take the place of The Lakeshore Apartments and testify to the books and records of The Lakeshore Apartments regarding Ma'at.

43.    In the state court matter, CBY is believed to be the party in interest and controlling the state court litigation.

44.    It is believed that the retainer agreement for the legal services related to the filing of the state court lawsuit against Ma'at is between CBY and ContiLegal only.

45.     In mid 2020, Ma'at had questions regarding why she had poor credit, and she thought the help of her son were able to obtain information about her credit from Credit Karma.

46.     It was at that point that Ma'at first learned that CBY was reporting a debt related to The Lakeshore Apartments.

47.     Prior to this, Ma'at had never heard of CBY.

48.     Prior to 2020, Ma'at did not receive any communication from CBY and it is believed that CBY did not attempt to send any communications directly to her.

49.     Ma'at's son called CBY at the number in the Credit Karma report and was informed by CBY that there was a lawsuit filed against Ma'at.

50.     Ma'at, though her son, requested verification of the debt from CBY that was the subject matter of the state court lawsuit, and in response CBY sent a letter title "**Validation**"  which attached to it the same "Final account statement" that was attached to the state court complaint.  Exhibit E.

51.     Ma'at, though her son, then disputed the amount directly with CYB, who then is believed to have directed ContiLegal to subsequently file a "**VERIFIED AMENDED COMPLAINT FOR ACCOUNT STATED**".  Exhibit F.

52.     Ma'at, though her son, also disputed the debt with TransUnion and the other two credit reporting agencies, Experian and Equifax.

53.     Ma'at as a matter of law is not liable for the amount stated, and CBY knew, or should of knew that is she is not liable for that amount stated.

54.     As a direct and proximate cause of the continued state court litigation against Ma'at for an amount she does not legally owe, she obtained, at her cost, legal counsel, Kelley & Evanchek, P.C. in Canton, Michigan, to defend her in the state court litigation.

55.     In discovery in the state court litigation Ma'at through her counsel issued an interrogatory asking, "**QUESTION 11**: Please explain how Plaintiff arrived at its claim for damages including but not limited to, the date the damages were calculated from as well as an itemized statement as to Plaintiff's alleged damages", Exhibit G, p. 5, to which the response was, "11. Objection.   The interrogatory is duplicative of Interrogatory #8 and thus, unduly burdensome." Exhibit H.

56.     In discovery in the state court litigation Ma'at through her counsel issued an interrogatory asking, "**QUESTION 8**: Please provide a complete accounting showing all charges, credits, debits and payments made on the account that you allege is the subject of this lawsuit from February 1, 2014 to the present", Exhibit G, p. 4, to which the response was, "8. Plaintiff is without sufficient knowledge to answer this interrogatory at the time but will attempt to supplement

this answer with a document that would be responsive to this interrogatory." Exhibit H.

57.    The "**VERIFIED AMENDED COMPLAINT FOR ACCOUNT STATED**" is signed by Elizabeth Annas, now claiming that, "[t]here is unpaid upon said account the sum of $1731.57".   Exhibit F.

58.    Elizabeth Annas is the "Administrative Manager at Credit Bureau of Ypsilanti, Inc." whose self-reported job description includes, "[c]reate legal process; complete, deliver, and handle legal documents" "Consults with clients and debtors" "validate documents".   https://www.linkedin.com/in/elizabeth-annas-1b11a1a3/ (visited February 25, 2020).

59.    In discovery in the state court litigation Ma'at through her counsel issued an interrogatory asking, "**QUESTION 6:** Please identify all documents that were reviewed by Elizabeth Annas prior to filing the complaint or amended complaint in this matter", Exhibit G, p. 3, to which the response was, "6. Plaintiff is without sufficient knowledge to answer the interrogatory." Exhibit H.

60.    In the state court discovery a document titled, " Lake Shore Apartments Ma'at Seba (Unit 25-A523) Resident Ledger" was produced, a document on information and belief, CBY could of or did have access to prior to the state court litigation being commenced against Ma'at. *See* Exhibit H.

## COUNT I – FDCPA / MOC CLAIMS

61.     Plaintiff incorporates paragraphs 1-59 herein.

62.     CBY engaged in a misleading and deceptive practice in violation of 15 U.S.C. § 1692e(14) and 15 U.S.C. § 1692e, when CBY caused the state court lawsuit to be filed against Ma'at, without simultaneous disclosing CBY's identity as the entity that caused to be filed and controlled the state court lawsuit, and as the entity that would testify to the court as to the books and records of The Lakeshore Apartments.

63.     15 U.S.C. § 1692e(14) prohibits, "[t]he use of any business, company, or other organization name other than the true name of the debt collector's business, company, or organization . . . ."

64.     15 U.S.C. § 1692e provides that, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."

65.     After the debt was disputed, CBY falsely verified the debt and falsely increased the amount of the debt in violation of 15 U.S.C. §§ 1692e, e(2)(A), § 1692f.

66.     CBY engaged in a misleading and deceptive practice in violation of MCL 339.915(a) and MCL 339.915(e) when CBY caused the state court lawsuit to be filed against Ma'at, without simultaneous disclosing CBY's identity as the entity that caused to be filed and controlled the state court lawsuit, and as the entity that would testify to the court as to the books and records of The Lakeshore Apartments.

14

67.     CBY engaged in a misleading and deceptive practice in violation of MCL 339.915(a) and MCL 339.915(e) when after the debt was disputed, CBY falsely verified the debt and falsely increased the amount of the debt

68.     MCL 339.915(a) prohibits "Communicating with a debtor in a misleading or deceptive manner[.]"

69.     MCL 339.915(e) prohibits, "Making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt[.]"

70.     MCL 339.915 (f) prohibits the "Misrepresenting in a communication with a debtor any of the following:

      (ii) The legal rights of the creditor . . . ."

71.     In managing the state court matter against Ma'at, CBY concealed its identity, disclosing only that the signatory of the "**VERIFIED COMPLAINT FOR ACCOUNT STATED**" and **VERIFIED AMENDED COMPLAINT FOR ACCOUNT STATED**" was an, "Agent for THE LAKESHORE APARTMENTS".

72.     CBY is the "client" of ContiLegal and ContiLegal treats CBY as the "client".

73.     ContiLegal's treatment of CBY as the "client" is inconsistent with the principals of the attorney-client relationship.

74.     CBY directs agents for The Lakeshore Apartments, believed to be persons employed by MMC Apartment Management, to obtain documents and to have verified the Interrogatories in the state court lawsuit filed against Ma'at.

75.     CBY therefore acts as the "client" to ContiLegal and acts in a manner that is inconsistent to a mere agent obtaining legal counsel on behalf of a principal.

76.     Elizabeth Annas cannot competently testify to the books of another entity as she lacks the required evidentiary foundation to do so.  Saying she does is false, misleading, and material and done in order to obtain default judgments against debtors on an account stated basis.

77.     CBY controlling the litigation amounts to unfair gameplaying in state court as demonstrated by The Lakeshore Apartments responses to discovery requests, asserting that it knows nothing, including how the damages asserted are calculated, that is because it is CBY that is controlling the litigation, and The Lakeshore Apartments are believed to only be contractually obligated to sign off on discovery requests and to provide a witness if the matter in the state court were to go to trial.

78.     CBY's acts complained of herein violated multiple provisions of the FDCPA and MOC.

79.     CBY's acts complained of herein were willful.

80.    Ma'at has suffered anxiety and anger over CBY's prosecution of the state court case seeking amounts not legally owed.

81.    Ma'at has suffered actual damages.

**WHEREFORE,** Plaintiff requests actual and statutory damages under the FDCPA and the MOC, and trebled under the MOC if a finding of willfulness is made, along with reasonable attorney's fees and costs.

## COUNT II – FAIR CREDIT REPORTING ACT

82.    Plaintiff incorporates paragraphs 1-60 herein.

83.    The Fair Credit Reporting Act, § 1681i(a) requires a reasonable reinvestigation of disputed credit information, which has been applied to a debt collector's responsibility to investigate and correct errors under 15 U.S.C. § 1681s-2(b).

84.    At a minimum, one consumer reporting agency, TransUnion relayed information related to Ma'at's dispute of the debt CBY was reporting directly to CBY.  Exhibit C.

85.    CBY relayed information to at least Trans Union in response to the dispute of Ma'at it received from at least Trans Union.

86.    CYB is a "furnisher of information" to a credit reporting agency.

87.    CBY was prohibited from reporting information with actual knowledge of errors.

88.    CBY was prohibited from reporting information to any consumer reporting agency after notice and confirmation of errors.

89.    The information that CBY was reporting as to Ma'at was inaccurate.

90.    The information that CBY reported after Ma'at's disputed the debt was inaccurate.

91.    Under § 1681s-2(b), "[u]pon receiving notice from a credit reporting agency that a consumer disputes the information a furnisher has provided, the furnisher is required to (1) investigate the veracity of the disputed information; (2) review the information provided by the credit reporting agency; (3) report the results of the investigation; and (4) correct any inaccuracies uncovered by the investigation." *Bach v. First Union Nat. Bank*, 149 Fed. Appx. 354, 358 (6th Cir. 2005) (unpublished) (*citing* 15 U.S.C. § 1681s-2(b)(1)(A)-(D)).

92.    CBY failed to review all of the relevant information related to the disputed debt.

93.    Indeed, CBY directed ContiLegal in the state court matter to reduce the amount of the debt sued upon from $2,396.57, Exhibit D, to $1731.57 Exhibit E, but nevertheless in verifying the debt as accurate, doubled down and increased the amount claimed was owing on the debt to "$2,615". Exhibit C.

94.    CBY's reporting of inaccurate information about the debt after receiving Ma'at's dispute was willful.

95.    Ma'at has suffered anxiety and anger over CBY's reporting of inaccurate information about the debt after receiving  Ma'at's dispute.

96.    Ma'at has suffered actual damages.

**WHEREFORE,** Plaintiff requests actual, statutory and punitive damages under the FCRA, along with reasonable attorney's fees and costs.

Respectfully submitted,
/s/ Curtis C. Warner

Curtis C. Warner (P59915)
5 E. Market, St.
Ste. 250
Corning, NY 14830
Tel: (888) 551-8685
cwarner@warner.legal

## DEMAND FOR A TRIAL BY JURY

Plaintiff pursuant to Rule 38 hereby demands a trial by jury.

Respectfully submitted,
/s/ Curtis C. Warner

Curtis C. Warner (P59915)
5 E. Market, St.
Ste. 250
Corning, NY 14830
Tel: (888) 551-8685
cwarner@warner.legal

## CERTIFICATE OF SERVICE

I, Curtis C. Warner, hereby certify that on **March 1, 2021**, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which

will send automatically notification to all attorneys of record who have so appeared.

I hereby certify that a copy of the document will be served on the Defendant along

with the Summons and further proof of service shall be filed with the Court.

Respectfully submitted,
/s/ Curtis C. Warner

Curtis C. Warner (P59915)
5 E. Market, St.
Ste. 250
Corning, NY 14830
Tel: (888) 551-8685
cwarner@warner.legal